IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02972-KLM

C.J.,

      Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

      Defendant.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court[1] on the **Social Security Administrative Record** [#14],[2] filed March 3, 2021, in support of Plaintiff's Complaint [#1] seeking review of the decision of the Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claims for disability insurance benefits pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq., and for supplemental security income benefits pursuant to Title XVI of the Act, 42 U.S.C. § 1381 et seq.  On May 5, 2021, Plaintiff filed an Opening Brief [#18] (the "Brief").  Defendant filed a Response [#19] in opposition, and Plaintiff filed a Reply [#22].  The Court has jurisdiction

_____

      [1]  The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2.  *See* [#15, #23].

      [2]  "[#14]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Order.

to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  The Court has reviewed the entire case file and the applicable law and is sufficiently advised in the premises.  For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

### I.  Background

On April 26, 2018, Plaintiff filed applications for disability insurance benefits under Title II and for supplemental security income under Title XVI, alleging disability beginning September 20, 2016.  Tr. 15.[3]  On February 4, 2020, an Administrative Law Judge (the "ALJ") issued an unfavorable decision.  Tr. 32.  The ALJ determined that Plaintiff meets the insured status requirements of the Act through September 30, 2018, and that he had not engaged in substantial gainful activity ("SGA") since September 20, 2016, the alleged onset date.  Tr. 17.  The ALJ found that Plaintiff suffers from seven severe impairments: (1) degenerative disc disease of the lumbar spine, (2) obesity, (3) hypertension, (4) obstructive sleep apnea, (5) hypoxemia, (6) depression, and (7) anxiety.  Tr. 18. However, the ALJ also found that Plaintiff's impairments did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)."  Tr. 18. The ALJ next concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work with the following limitations:

> The claimant must be able to alternate between standing and sitting every thirty minutes for a brief position change while continuing to work at the

---

[3]  The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 14 through 14-8 by the sequential transcript numbers instead of the separate docket numbers.

workstation.  He cannot climb ladders, ropes, or scaffolds and can only occasionally stoop, crouch, kneel, or crawl.  He must avoid exposure to extreme cold.  The claimant can have no interaction with the general public and only occasional interaction with coworkers and supervisors.  He [cannot do] tandem jobs and requires a low stress work environment with no production rate or other constant motion job tasks.

Tr. 21.  Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff could not perform any past relevant work but was able to perform the representative occupations of routing clerk, mail clerk, and office helper.  Tr. 30-31. She therefore found Plaintiff not disabled at step five of the sequential evaluation.  Tr. 32. The ALJ's decision has become the final decision of the Commissioner for purposes of judicial review.  20 C.F.R. §§ 404.981, 416.1481.

## II.  Standard of Review and Applicable Law

Pursuant to the Act:

[T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

Barnhart v. Thomas, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)).  Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a); see also Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)).  The existence of a qualifying disabling impairment must be demonstrated

by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo.*" *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

A.      **Legal Standard**

- 4 -

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.").  The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity." *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)).  If not, the ALJ considers at step two whether a claimant has "a medically severe impairment or impairments." *Id.*  "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142).  "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him or her] from performing [his or her] past relevant work." *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142).  "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

**B.    Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  However, the ALJ need not specifically "reference everything in the administrative record."  *Wilson*, 602 F.3d at 1148.  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1140 (internal quotation marks omitted).  "It requires more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ."  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole."  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  Further, evidence is not substantial if it "constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  Analysis

Plaintiff argues that the ALJ erred by failing to (1) support her determination that Plaintiff's severe impairments did not meet the requirements of Listing 1.04 with substantial evidence and (2) properly account for Plaintiff's limited ability to adapt or manage himself.  *Brief* [#18] at 4, 9.

### A.    Step Three

Plaintiff first argues that the ALJ erred at step three of her analysis by finding that Plaintiff's impairments did not meet the requirements of Listing 1.04.  *Brief* [#18] at 4-7;

*Reply* [#22] at 1-3.  Listing 1.04 was amended effective April 2, 2021, but the parties agree that the version in effect at the time of the ALJ's decision governs the Court's decision here on Plaintiff's appeal.  *See Revised Medical Criteria for Evaluating Musculoskeletal Disorders*, 85 Fed. Reg. 78164; *Brief* [#18] at 5; *Response* [#19] at 11.

To meet the criteria of Listing 1.04 in effect at the time of the ALJ's decision, a claimant must satisfy the following:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> >
> > or
> >
> > B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> >
> > or
> >
> > C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Pt. 404, Subpt. P., App. 1 § 1.04.  The ALJ determined that the requirements of 1.04A, 1.04B, and 1.04C were not met.  Tr. 18-19.  Although Plaintiff does not explicitly say so, the entirety of his argument appears to go toward asserting that the ALJ erred

regarding 1.04A.  *See Brief* [#18] at 4-7; *Reply* [#22] at 1-3.  Thus, the Court need not address the ALJ's determinations regarding 1.04B or 1.04C.  Regarding 1.04A, the ALJ stated: "The record evidence fails to demonstrate a nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and positive straight leg raising (1.04A)."  Tr. 18.

This case is materially similar to *K.N. v. Kijakazi*, No. 20-2653-DDC, 2022 WL 767272, at *4 (D. Kan. Mar. 14, 2022), where the ALJ determined that the plaintiff had not met the requirements of a particular listing because the plaintiff had failed to present "evidence of a persistent deformity in one or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively or one or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively."  Relying on legal authority from the Tenth Circuit Court of Appeals, the ALJ noted that ALJs must "set out [their] specific findings and [ ] reasons for accepting or rejecting evidence at step three," but that, "when an ALJ provides detailed findings at other steps in the analysis supporting the step three decision in a readily reviewable manner, the ALJ has met the requirement."  *K.N.*, 2022 WL 767272, at *4 (quoting *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996); citing *Fischer-Ross v. Barnhart*, 431 F.3d 729, 735 (10th Cir. 2005)).

In *Fischer-Ross v. Barnhart*, the Tenth Circuit found that the ALJ had "failed to include specific findings underlying the step three analysis within that discussion, but included them instead at the step four and five discussion." The Court therefore affirmed the ALJ's findings, holding that there was "harmless administrative error where the ALJ's decision showed he clearly had considered the evidence, even though the discussion

appeared elsewhere in the record." *K.N.*, 2022 WL 767272, at *4 (discussing *Fischer-Ross*, 431 F.3d at 735.

Applying that framework, the *K.N.* court determined that, although "the ALJ's step three analysis doesn't cite specific evidence to demonstrate that he considered the record, . . . the ALJ's step four discussion contains multiple references to medical evidence which provides more than the scintilla of evidence that the law requires." *K.N.*, 2022 WL 767272, at *4. The court thus determined that, "while the ALJ erred by not citing sufficient evidence in his step three analysis, the error was harmless error because he later cited the record's medical evidence within the RFC analysis." *Id.* In short, the court held that "the ALJ provided sufficient information to demonstrate he appropriately considered the evidence when reaching his conclusion that plaintiff's impairments don't meet the requirements of Listing 14.09," and that "the ALJ provided sufficient information to allow proper judicial review." *Id.* at *5.

As noted above, at Step Three the ALJ essentially stated there was insufficient evidence to support the requirements of Listing 1.04A, although without any actual analysis. Tr. 18. However, at Step Four the ALJ thoroughly discussed all of the evidence which Plaintiff argues should have been addressed at Step Three. *Brief* [#18] at 5-6; Tr. 22, 29 (discussing Plaintiff's self-reported functional limitations and hearing testimony); Tr. 23 (discussing Plaintiff's February 20, 2017 MRI showing spondylosis); Tr. 25 (discussing Plaintiff's October 31, 2017 MRI of the lumbar spine); Tr. 23 (discussing Plaintiff's August 30, 2016 physical therapy evaluation/treatment); Tr. 23 (discussing

Plaintiff's January 31, 2017 evaluation regarding a straight leg test[4]).  As in *K.N.*, the Court here finds that the ALJ adequately discussed the underlying evidence such that the ALJ's reasoning can be followed.  *See, e.g.*, *Thomas v. Berryhill*, No. 17-cv-02423-KLM, 2019 WL 1375676, at *5 (D. Colo. Mar. 27, 2018) ("Plaintiff does not cite to any objective medical evidence purportedly overlooked by the ALJ which would allow her to meet the requirements of Listing 1.03.").  Nothing in the ALJ's later discussion of the objective medical evidence shows any obvious error with respect to her Step Three conclusion as to Listing 1.04A.  To the extent the ALJ should have discussed this evidence at Step Three, any such error is harmless.

Accordingly, the Court finds that the ALJ did not commit reversible error with respect to her Step Three analysis of whether Plaintiff meets the requirements of Listing 1.04A.

## B.    Step Four

Plaintiff next argues that the ALJ erred by failing to account for Plaintiff's limited ability to adapt or manage himself.  *Brief* [#18] at 9.

The ALJ did not explicitly discuss Plaintiff's ability to adapt or manage himself at Step Four but did so at Step Three.  Listing 12.00E(4) states that the ability to adapt or manage oneself "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting," examples of which include: "[r]esponding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic

---

[4]   Citing Tr. 458, Plaintiff states that this evaluation occurred on August 2, 2018, but the correct date of this record appears to be January 31, 2017.  *Brief* [#18] at 6.

goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions."   The ALJ discussed this criterion with respect to Plaintiff as follows:

> As for adapting or managing oneself, the claimant has experienced a moderate limitation.  The claimant stated that he is able to handle self-care and personal hygiene with some limitations for pain. Meanwhile, the objective evidence in the record showed the claimant to have appropriate grooming and hygiene, no problem getting along well with providers and staff with only one incident of anger and irritability.  Further, the information he provided in his function report demonstrate that he has adjusted his personal care and other activities to accommodate his limitations.  This suggests he has the ability to adapt to changes and respond appropriately to challenges.  He is constantly noted throughout the records as alert and fully oriented.  Even when the claimant reported symptoms of anxiety or depression, he was still active, alert, attentive, and fully oriented.  It was noted the claimant had no personality change or problems driving due to mental health issues.  The claimant's memory was normal and he had normal speech and comprehension.

Tr. 20.

On close reading, the ALJ's statements here reflect the conclusion that Plaintiff has had moderate limitations in managing himself but that has been able to adapt to overcome those limitations.  For the most part, the ALJ's analysis of this criterion discusses how Plaintiff *is* able to adapt and manage as opposed to any limitation he has in this area, despite the fact that the ALJ found that Plaintiff "has experienced a moderate limitation."  Tr. 20.  In fact, the only mention of any limitations here are (1) Plaintiff can handle self-care with some limitations for pain; (2) Plaintiff can handle personal hygiene with some limitations for pain; and (3) Plaintiff had one incident of anger and irritability with providers and staff.  Tr. 20.  The ALJ addressed both of these issues in the RFC. Regarding pain, the ALJ stated:

> The location, duration, frequency, and intensity of the claimant's pain and other symptoms were also considered. The record documents complaints of pain and that the claimant has sought treatment for his symptoms. However, the frequency and intensity of his symptoms as shown in the evidence do not support the need for greater limitations. Further, the aggravating factors were considered and accommodated in the [RFC]. The claimant is limited to light work with the ability to shift positions along with additional postural limitations and no exposure to extreme cold or constant motion tasks in order to avoid exacerbation of his physical symptoms.

Tr. 29. Regarding interactions with others, the ALJ stated: "He is further limited in his interactions with others and the stress level of his job in order to avoid exacerbation of his mental health symptoms." Tr. 29. This part of the discussion was stated in the RFC as follows: "The claimant can have no interaction with the general public and only occasional interaction with coworkers and supervisors. He [cannot do] tandem jobs and requires a low stress work environment with no production rate or other constant motion job tasks." Tr. 21. Thus, the ALJ fashioned an RFC which considered the only limitations mentioned in connection with the Plaintiff's ability to adapt and manage himself.

Plaintiff does not explain how these RFC parameters fail to address the specific issues raised at Step Three. Plaintiff argues that limiting a claimant to unskilled work is not sufficient in the Tenth Circuit to account for mental limitations, *see Brief* [#18] at 9-10; *Reply* [#22] at 3-4 (citing *Warren v. Colvin*, 170 F. Supp. 3d 1360, 1364 (D. Colo. 2016)), but the ALJ did not simply limit Plaintiff to unskilled work; rather, the ALJ discussed specific parameters underlying the limitations at issue. No more was required. *See Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014) (stating that moderate limitations "must be accounted for in an RFC finding").

Accordingly, the Court finds that the ALJ did not commit reversible error on this issue.

### IV.  Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.


Dated: March 28, 2022


BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge